WILHELMINA HOFFMAN, Respondent, *v.* JOHN KING and JOHN G. McCULLOUGH, as Receivers of the NEW YORK, LAKE ERIE AND WESTERN RAILROAD COMPANY, Appellants.

1. NEGLIGENCE — COMBUSTIBLE MATERIAL ON RAILROAD RIGHT OF WAY. As even properly constructed locomotives, with the most approved spark arresters, will, of necessity, emit some sparks, it is the duty of a railroad company, in periods of drought, to keep its right of way free from combustible material which is liable to be ignited from sparks so emitted; and failure so to do constitutes negligence.

2. FIRE NEGLIGENTLY SET — RULE AS TO PROXIMATE RESULT. The rule of liability for fires negligently set, that the damage must be the proximate, that is, the immediate, result of the negligent act, applies to fires on woodlands with the same force as to fires in cities or villages.

3. PROXIMATE RESULT, AND LIABILITY FOR FIRE, LIMITED TO ABUTTING LANDS. If a person lights a fire upon his own premises, upon which

he has maintained inflammable material extending to his neighbor's lands, and the fire, fed by this material, spreads upon the abutting lands, the damage is the proximate result of the act and a liability exists; but the damage to the abutting lands is the limit of liability, and if the fire runs across the abutting owner's lines, upon lands of other proprietors, causing damage, such damage is not the proximate result of the original fire and imposes no liability upon its starter.

4. LIABILITY OF RAILROAD COMPANY FOR FIRE NEGLIGENTLY SET DOES NOT EXTEND BEYOND ABUTTING LANDS. A railroad company, which has negligently set a fire in inflammable material on its right of way, is not liable to the owner of lands not abutting on its premises, for damages caused by fire communicated through the abutting and intervening woodlands of a third person, over which the railroad company had no control and without which the fire could not have extended.

*Hoffman* v. *King*, 30 App. Div. 621, reversed.

(Argued October 17, 1899; decided November 21, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered May 16, 1898, affirming a judgment in favor of plaintiff entered upon a verdict, and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinions.

*Henry Bacon* for appellants. No negligence of the railroad company in caring for the right of way was established. (*Clark* v. *Foot*, 8 Johns. 421; *Stuart* v. *Hawley*, 22 Barb. 619; *Calkins* v. *Barger*, 44 Barb. 424; *Frace* v. *N. Y., L. E. & W. R. R. Co.*, 143 N. Y. 182; *Laidlaw* v. *Sage*, 158 N. Y. 73; *Kaplan* v. *N. Y. B. Co.*, 151 N. Y. 171; *Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 358; *Dwight* v. *G. L. Ins. Co.*, 103 N. Y. 341; *Linkhauf* v. *Lombard*, 137 N. Y. 417; *People ex rel.* v. *Martin*, 142 N. Y. 352.) There is no liability by reason of the condition of the lands between the wire fence and the line of the old fence. (*Frace* v. *N. Y., L. E. & W. R. R. Co.*, 143 N. Y. 182.) Testimony as to fires on this bank before May, 1894, was inadmissible. (*Warner* v. *N. Y. C. R. R. Co.*, 44 N. Y. 465; *Ross* v. *Ackerman*, 46 N. Y. 210; *Fillo* v. *Jones*, 2 Abb. Ct. App. Dec. 121; *Brady* v. *M. Ry. Co.*, 127 N. Y. 46; *Sherman* v. *Kortright*, 52 Barb.

267; *O'Hagan* v. *Dillon*, 76 N. Y. 170; *Englert* v. *Kruse*, 8 N. Y. S. R. 375.) Testimony that the right of way was burned in the usual way in April, 1894, was admissible. (*Dougan* v. *C. T. Co.*, 56 N. Y. 1; *Cocheron* v. *Ferry Co.*, 56 N. Y. 656; *Loftus* v. *Union Ferry Co.*, 84 N. Y. 455; *Burke* v. *Witherbee*, 98 N. Y. 562; *Lafflin* v. *B. & S. R. R. Co.*, 106 N. Y. 136; *Flinn* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 11.) Defendants are not liable for material which was blown upon the right of way after April, 1894. (*Pomfrey* v. *Village of Saratoga Springs*, 104 N. Y. 459; *Kaveny* v. *City of Troy*, 108 N. Y. 571; *Harrington* v. *City of Buffalo*, 121 N. Y. 147; *McNally* v. *City of Cohoes*, 127 N. Y. 350.) There is no liability for fire accidentally set. (6 Anne, chap. 31, § 6; 2 Eng. Stat. at Large, 414; 10 Anne, chap. 14, § 1; 12 Eng. Stat. at Large, 305; 12 George III, chap. 73, § 137; 29 Eng. Stat. at Large, 217–246; 14 George III, chap. 78, §§ 1, 86; 30 Eng. Stat. at Large, 483–535; *Richards* v. *Easto*, 15 M. & W. 244; *Filliter* v. *Phippard*, 11 Ad. & El. [N. S.] 346; *Bogardus* v. *Trinity Church*, 4 Paige, 178; *Canal Comrs.* v. *People*, 5 Wend. 423; *Lansing* v. *Stone*, 37 Barb. 15; *Patterson* v. *Winn*, 5 Pet. 232; *Webb* v. *R., W. & O. R. R. Co.*, 49 N. Y. 420; *Flinn* v. *N. Y. C. & H. R. R. R. Co.*, 142 N. Y. 11.) There is no liability because of neglect in preventing the spread of the fire. (*P. R. R. Co.* v. *Hixon*, 79 Ind. 111; *L. N. A. R. R. Co.* v. *Ehret*, 87 Ind. 139; *I. B. & W. R. R. Co.* v. *Adamson*, 90 Ind. 60; *I. B. & W. R. R. Co.* v. *Brown*, 91 Ind. 111.) The statute requiring railroads to clear their right of way will not sustain this action. (*Salisbury* v. *Howe*, 87 N. Y. 128; *H. Ins. Co.* v. *W. & T. Co.*, 51 N. Y. 93; *Hall* v. *Erwin*, 66 N. Y. 649; *Duryee* v. *Lester*, 75 N. Y. 442; *Lockwood* v. *Quackenbush*, 83 N. Y. 607; *O'Neill* v. *N. Y., O. & W. Ry. Co.*, 115 N. Y. 579; *Post* v. *M. Ry. Co.*, 125 N. Y. 697.) Plaintiff's damages are too remote. (*Rood* v. *N. Y. & E. R. R. Co.*, 18 Barb. 80; *Matter of U. C. & S. V. R. R. Co.*, 56 Barb. 456; *Collins* v. *N. Y. C. & H. R. R. R. Co.*, 5 Hun, 503; *Ryan* v. *N. Y. C. R. R. Co.*, 35 N. Y. 210; *Read* v. *Nichols*, 118 N. Y.

224; *Clark* v. *Foot*, 8 Johns. 421; *Stuart* v. *Hawley*, 22 Barb. 619; *Lansing* v. *Stone*, 37 Barb. 15; *Calkins* v. *Barger*, 44 Barb. 424; *Penn. Co.* v. *Whitlock*, 99 Ind. 16.)

*John F. Anderson* for respondent. The admission of testimony of fire on this bank before May, 1894, was not error. (L. 1893, ch. 332, § 107.) The fire was not accidentally set. (*O'Neill* v. *N. Y., O. & W. Ry. Co.*, 115 N. Y. 579.) This action was based on the negligence of the defendants, and it can make no difference whether the negligence consisted in not complying with the statute or the common law. Negligence is the gravamen of the action. (L. 1893, ch. 332, § 107; L. 1885, ch. 283, § 25; *Webb* v. *R., W. & O. Ry. Co.*, 49 N. Y. 420; *O'Neill* v. *N. Y., O. & W. Ry. Co.*, 115 N. Y. 579; *Brown* v. *B., R. & P. R. R. Co.*, 4 App. Div. 465; *Brush* v. *L. I. R. R. Co.*, 10 App. Div. 535; *Martin* v. *N. Y., O. & W. Ry. Co.*, 62 Hun, 181; *Van Ostrand* v. *W. V. R. R. Co.*, 46 N. Y. S. R. 456.) The case was properly submitted to the jury. (*Webb* v. *R., W. & O. Ry. Co.*, 49 N. Y. 420; *Pollett* v. *Long*, 56 N. Y. 200; *Lowery* v. *M. Ry. Co.*, 99 N. Y. 158; *O'Neill* v. *N. Y., O. & W. Ry. Co.*, 115 N. Y. 579; *Frace* v. *N. Y., L. E. & W. R. R. Co.*, 143 N. Y. 189; *Martin* v. *N. Y., O. & W. Ry. Co.*, 62 Hun, 181.)

HAIGHT, J. This action was brought to recover damages alleged to have been occasioned by a fire negligently set by the defendants or their employees. The negligence complained of consisted in allowing to accumulate upon the corporation's right of way, inflammable material which was liable to become ignited from the sparks emitted from passing locomotives. The evidence tended to show that the fall before the defendants had caused sweet fern brush, huckleberry brush, weeds and stuff to be mowed, which they then permitted to lie upon the ground, and that it was in this material the fire started and spread upon adjoining lands and thence across the lands of several intervening owners for a distance of two miles upon the plaintiff's lands, causing the

damage that is sought to be recovered in this action. The trial court submitted the question of negligence to the jury upon the theory that properly constructed locomotives, with the most approved spark arresters, will, of necessity, emit some sparks, and that, consequently, in periods of drought, the duty devolved upon the defendants of keeping their right of way free from combustible material which was liable to be ignited from sparks so emitted. We think the case is free from error in this respect.

The only question which requires consideration here is as to whether the damage to the plaintiff is the natural and proximate result of the negligence complained of, or is so remote that it would not be reasonably expected as a result of such negligence. At the conclusion of the plaintiff's evidence the defendants' counsel moved for a dismissal of the complaint, upon the grounds, among others, that the testimony showed that the fire had burned two days, and had crossed over more than two miles of country before it reached the plaintiff's lands ; that the fire which started on the defendants' right of way was not the probable or proximate cause of the plaintiff's injury, and that such a result was not to be reasonably anticipated. This motion was denied and an exception was taken by the defendants. It was again renewed at the close of the evidence, in substantially the same form, and met with a similar ruling, to which an exception was also taken.

At common law every master of a house or chamber was bound to so keep his fire as to prevent it from occasioning injury to his neighbors. If a fire broke out in a house and burned an adjoining dwelling or did other damage, the master of the house in which the fire began was liable to make compensation. It was not necessary to prove negligence ; the law presumed it. (Year Book, 2 H. 4, pl. 18 ; 1 Black. Com. 431.)

This law was first changed by statute 6 Anne, c. 31, which provided that : "No action shall be maintained against any person in whose house or chamber any fire shall accidentally begin, for their own loss is sufficient punishment for their own

or their servants' carelessness." This statute was amended by 14 Geo. III, c. 78, which provided that : " No action shall be brought against any person in whose house, chamber *or other building, or whose estate* any fire shall accidentally begin, any law, usage or custom to the contrary notwithstanding." The provisions of these statutes have been limited to accidental fires and not to those negligently set ; under the statute, however, negligence will no longer be presumed, but must be shown by the party asserting it. (*Filliter* v. *Phippard,* 11 Adol. & Ellis [N. S.], 347.)

We thus call attention to the law of England for the purpose of better understanding our own authorities upon the subject.

The first case to which we call attention is that of *Ryan* v. *N. Y. C. R. R. Co.* (35 N. Y. 210). In that case the defendant through careless management of, or defects in, one of its engines set fire to its woodshed in the city of Syracuse and the fire was communicated from such burning building to the plaintiff's house, which was consumed. An action was brought to recover from the railroad company the value of the building destroyed. A nonsuit was granted at Circuit and the judgment entered thereon was affirmed in the General Term and in this court, for the reason that the damages were too remote and were not the natural and expected result of the firing of the woodshed. Hunt, J., in delivering the opinion of the court, says : " If, however, the fire communicates from the house of A. to that of B., and that is destroyed, is the negligent party liable for his loss ? And if it spreads thence to the house of C., and thence to the house of D., and thence consecutively through the other houses, until it reaches and consumes the house of Z., is the party liable to pay the damages sustained by these twenty-four sufferers ? The counsel for the plaintiff does not distinctly claim this, and I think it would not be seriously insisted that the sufferers could recover in such case. Where, then, is the principle upon which A. recovers and Z. fails ? * * * In the destruction of the building upon which the sparks were thrown by the negligent

act of the party sought to be charged, the result was to have been anticipated the moment the fire was communicated to the building; that its destruction was the ordinary and natural result of its being fired. In the second, third or twenty-fourth case, as supposed, the destruction of the building was not a natural and expected result of the first firing. That a building upon which sparks and cinders fall should be destroyed or seriously injured must be expected, but that the fire should spread and other buildings be consumed, is not a necessary or an usual result. That it is possible, and that it is not unfrequent, cannot be denied. The result, however, depends, not upon any necessity of a further communication of the fire, but upon a concurrence of accidental circumstances, such as the degree of the heat, the state of the atmosphere, the condition and materials of the adjoining structures and the direction of the wind. These are accidental and varying circumstances. The party has no control over them, and is not responsible for their effects."

In *Webb* v. *R., W. & O. R. R. Co.* (49 N. Y. 420) the defendant's engine dropped a live coal upon a tie and set it on fire. Weeds, grass and rubbish had been permitted to accumulate from that place to the fence of the defendant's right of way. The defendant's engine was defective and the coal was negligently dropped. At the time, a strong wind was blowing, and it was a season of extreme drought. The fire quickly ran through the grass and rubbish to the defendant's fence and then spread upon the plaintiff's next adjacent woodland, destroying his timber and causing damages for which the action was brought. It was held in that case that the accumulation of the weeds, grass and rubbish through which the fire was communicated to the plaintiff's premises was one of the elements of negligence with which the defendant was chargeable, and for that reason the defendant was liable; that it was in effect the same as if the defendant had thrown the coal which set the fire directly upon the plaintiff's lands and there started the fire. FOLGER, J., in delivering the opinion of the court, enters upon a consideration of the rule

at common law and the *Ryan* case, and discusses the question
of proximate cause and results necessarily and reasonably to
be expected, and approves the rule that the liability of a per-
son extends to his immediate neighbor only for the damages
caused to him by the spread of the fire upon his next adjacent
or contiguous property.  In commenting upon the *Ryan* case,
he says:  " It announces no new principle.  It recognizes the
principle which it adopts as one before that established, and
applying it to the facts therein existing, holds the damage
sued for was not the necessary and natural result of the neg-
ligent act."

In *Frace* v. *N. Y., L. E. & W. R. R. Co.* (143 N. Y. 182)
the action was brought to recover damages for the destruction
of a barn and hotel.  The evidence showed that the barn first
caught fire, and it was a controverted question of fact upon
the trial as to whether the hotel building took fire from coals
emitted from the engine or from fire communicated from the
burning barn.  The trial judge charged the jury that, " to
justify a verdict covering or including the value of the hotel,
you must find that the same was destroyed by reason of the
fire being communicated thereto directly from the engine, or
without the assistance of other agencies and arising from other
causes.  This is a question for you to determine from the evi-
dence."  PECKHAM, J., in delivering the opinion of the court,
says with reference to this charge:  " We think the charge of
the learned judge upon this part of the case was as favorable
to the defendant as it could properly ask.  The question was
left as one of fact, under all the circumstances, as to whether
the burning of the hotel were not the natural and direct result
of the sparks from the engine.  In this case the court commit-
ted no error to the prejudice of the defendant."

In *Reed* v. *Nichols* (118 N. Y. 224) the action was for dam-
ages caused by a fire which destroyed two of the plaintiff's
buildings.  A strong wind carried sparks from a smokestack
belonging to the defendants to the roof of a building 280 feet
distant, setting it on fire.  After the building commenced to
burn the wind died down and changed its course; the fire

communicated to another building north and thence across the street to a barn of the plaintiff, then a building north of the one first set on fire, and from it spread to and destroyed another building of the plaintiff. It was held that the burning of the plaintiff's buildings was not the proximate, but was the remote result of the negligent acts complained of, and that there could be no recovery.

In *O'Neill* v. *N. Y., O. & W. Ry. Co.* (115 N. Y. 579) the action was brought to recover damages for injuries to woodlands belonging to the plaintiff, which, it was claimed, had been set on fire through the negligence of the defendant. It appeared that sparks from a locomotive passing on the defendant's road set fire to brushwood, rails and other combustible material which it had allowed to accumulate on its lands. The fire spread to the lands of C., and from thence to the lands of plaintiff. The plaintiff was permitted to recover. On review in this court it was claimed that the damages were too remote. It was held that this question could not be reviewed for the reason that the point was not raised nor presented to the trial court. DANFORTH, J., in his opinion, however, proceeds to comment upon the question, saying : " The fact that land of a third party intervened between the woodland of the plaintiff and the defendant's road, cannot be doubted, but that alone is not decisive. Other circumstances would control, and, if not already apparent in evidence, we cannot say that further testimony would not have shown that the result was to have been anticipated from the moment fire dropped upon the defendant's premises, and that the destruction which happened to the plaintiff's property was the natural and direct effect of the first firing. If so, it was not remote."

In *Martin* v. *N. Y., O. & W. Ry. Co.* (62 Hun, 181) an action was brought to recover damages to woodlands by a fire started negligently, which had spread over the lands of other persons, which intervened, and thence to the plaintiff's lands nearly a mile distant from the point where the fire began ; it was held that the plaintiff could recover.

We do not deem it important to refer to other cases, for

those cited show the place at which the authorities diverge. If the comments in the opinion in the *O'Neill* case are to be adopted as the basis of liability in future cases, then a different rule must be recognized with reference to fires set upon woodlands from that existing in cities, towns and villages. In the *O'Neill* case the question now under consideration was not raised, and the learned judge writing the opinion says: "It, therefore, cannot be listened to." He, notwithstanding, did proceed to comment upon the question as we have shown, and it is doubtless true that since the publication of the opinion the courts of original jurisdiction and the legal profession have generally supposed that a new rule had been adopted. It is, however, clear that the comments were not essential to the decision then made, being merely dictum, and we consequently are at liberty to again consider the subject.

Is there any good reason for a different rule of liability with reference to fires on woodlands from that existing in cities and villages? It is said that inflammable material is common upon woodlands, and that a fire once ignited will continue to burn until checked by a change of wind, or quenched by the fall of rain. But this is also true with reference to our villages and many of our large cities where the buildings are chiefly constructed of wood. In these localities inflammable material abounds to feed a flame once started, and a fire in a burning building during a strong wind is liable to spread and produce damages a hundred fold greater than any probable injury resulting from such a fire on woodlands. Exceptions to the general rule are not favored in the law, unless a necessity therefor exists. No such necessity is apparent to our minds, and we think no good reason exists for establishing a different rule of liability with reference to woodlands from that existing in cities, villages and other localities. What then is the rule of liability for fires negligently set? We think this question is fully answered by the common law and the cases in our own court, to which we have referred. The damage must be the proximate result of the negligent act. It must be such as the ordinary mind would reasonably expect

as a probable result of the act, otherwise no liability exists. If a person negligently throws a live coal of fire upon another's building, causing it to burn, the damages are the direct result of a negligent act, and the result is that which the ordinary mind would reasonably expect. If a person lights a fire upon his own premises, upon which he has maintained inflammable material extending to his neighbor's lands, and the fire, fed by this material, spreads upon abutting lands, the damage is the proximate result of the act and a liability exists, and this, we think, is the limit. It is contended that liability ought not to be thus limited; that a fire once set may run across the lines of an abutting owner and upon lands of other proprietors, causing damage. It must be conceded that such a result often happens. It did in the case we have under consideration. But where is the line to be drawn? Shall it be one mile, two miles or ten miles distant from the place of the original starting of the fire? Who is to specify the distance? It is suggested that it might be left to the jury; but a jury in one part of the state might answer one mile, and in another part it might determine the rule of liability to extend ten miles. The evidence upon this branch of the case is undisputed, and in such cases the question as to what is proximate cause is always for the court and not for the jury.

While we appreciate the force of the argument in favor of extending the rule of liability, and recognize the fact that a limitation of the rule will deprive many persons of a right of action for damages, we are convinced that the old rule is wiser and more just and that we ought not to depart from it. The limitation may be somewhat arbitrary, but it recognizes the principle that we should live and let live. Fires often occur from the trivial acts of most prudent persons. Great conflagrations are daily reported. Not long since one of our largest cities substantially disappeared within a single day. No person, however cautious, is exempt; misfortune may overtake him in a forgetful moment, or through fault in the members of his family or servants. No man is able to answer for all the remote consequences of his acts and those for whom

he is responsible. Hence, the wisdom of the rule of proximate cause which, as defined by Webster, is that which immediately precedes and produces the effect. The fire set by the defendant did not immediately precede the fire upon the plaintiff's land; other lands intervened covered with inflammable material over which the defendant had no control, and without which the fire could not have extended upon plaintiff's premises. The drought, atmosphere and wind were the principal agents assisting the fire in its work of destruction, and were the intervening causes of the damage. It is unfortunate for the plaintiff, but we think her damage was the remote and not the proximate result of the defendant's fire.

The judgment should be reversed and a new trial ordered, costs to abide the event.

Vann, J. (dissenting). We must assume from the record before us that the defendants, during a dry time, and when a high wind was blowing, negligently started a fire on the lands of the railroad corporation represented by them as its receivers, and that such fire spread in a continuous and direct line over woodlands belonging to several proprietors for a distance of about two miles to those of the plaintiff, and there destroyed fences and standing timber, belonging to her, worth seventy-five dollars. All the lands burned over were forest lands, except those of the railroad company, which consisted simply of the usual strip for a right of way. As one of the witnesses testified: " Between the origin of the fire and Mrs. Hoffman's line it was a continuous line of wooded land. The fire burned pretty rapidly the whole distance. The grounds in that distance were covered with brush of all kinds about and leaves, tree tops and limbs, and that extended clear through to the land of Mrs. Hoffman."

The main question presented for decision is whether the damage done to the plaintiff's property was the natural and proximate result of the defendant's negligence? If it was, it is conceded that she was entitled to recover, but if it was not the defendants must prevail.

The trial judge charged that even if the defendants were

negligent, still the jury could not find for the plaintiff unless the destruction of her property "was the natural and direct effect of such negligence." As there was a verdict for the plaintiff and the judgment entered thereon has been affirmed by the Appellate Division, but not unanimously so far as the record shows, if the evidence according to any reasonable view thereof sustains the finding, it is conclusive upon this court, provided the question of proximate cause was one of fact. Even when there is no conflict of evidence, if diverse inferences may be drawn from the conceded facts, the question is for the jury.

The defendants, however, contend that as the lands of the plaintiff did not abut upon those of the railroad company, the question of proximate cause is purely one of law. Their main reliance is the case of *Ryan* v. *N. Y. C. R. R. Co.* (35 N. Y. 210), where it was held that a railroad company, which negligently set fire to wood in a shed on its own land, and the fire spread to and destroyed a dwelling house on the lands of another immediately adjoining, was not liable to the owner because the negligent act was not the proximate cause of the loss. This case has been criticised, distinguished, and to some extent, at least, overruled. It cannot now be regarded as in all respects the law of the state, because it is well established that one who negligently sets a fire upon his own premises, which spreads to the premises immediately adjoining and destroys the property of another thereon, is liable to the latter for the damages sustained by him. ( *Webb* v. *R., W. & O. R. R. Co.*, 49 N. Y. 420.)

In deciding the case last cited the court, referring to the *Ryan* case, said : " In the disposition of the case before us we are not to be controlled by the authority of the case in 35 N. Y. more than we are by that of the long line of cases which preceded it, and which have been herein cited and adverted to. * * * It is proper, however, to say, that it is not necessary in this case to differ from or to question the reasoning in that case, which fortifies the conclusion there reached by a consideration of the relations of men to each other in

populous cities and villages, and the disastrous consequences to follow from holding one liable for his own or his servant's negligence by which a fire is kindled in his house which spreads to the property of one or more neighbors.   *   *   * If in a time of extreme drought and high wind there be laid . or suffered to gather a train of readily combustible matter up to the bounds of another's property, it is not to be denied but that it is an act of negligence to drop fire at the hither end of that train; nor but that it is an ordinary, a usual, a necessary result, reasonably to be expected, that the fire will run from particle to particle through it, and catch in whatever will burn which is adjacent at the thither end." The *Ryan* case was further criticised in *Pollett* v. *Long* (56 N. Y. 200, 206), and distinguished in *Lowery* v. *Manhattan Ry. Co.* (99 N. Y. 158, 166). In *Reed* v. *Nichols* (118 N. Y. 224), where there was a verdict for the defendant, the court referred to it as distinguished but not overruled. That was not a case where woodlands were affected and a second cause intervened between the start and culmination of the fire.

In *Frace* v. *N. Y., L. E. & W. R. R. Co.* (143 N. Y. 182) it was further considered. In that case the property destroyed was a barn, which first caught fire, and a hotel about forty feet distant therefrom. The trial judge charged that to justify a verdict including the value of the hotel, the jury must find that it was destroyed by reason of the fire being communicated thereto directly from the engine, or without the assistance of other agencies. In reviewing the case this court said : " We think the charge of the learned judge upon this part of the case *was as favorable to the defendant* as it could properly ask. The question was left as one of fact, under all the circumstances, as to whether the burning of the hotel were not the natural and direct result of the sparks from the engine. In this case the court committed no error *to the prejudice of the defendant.* The *Ryan Case* (35 N. Y. 210) should not be extended beyond the precise facts which appear therein. Even if correctly applied in that case, the principle ought not to be applied to other facts."

In *O'Neill* v. *N. Y., O. & W. Ry. Co.* (115 N. Y. 579) sparks from a locomotive passing on defendant's road set fire to brushwood, old rails and other combustible materials which it had allowed to accumulate on its lands, and the fire spread to the lands of another and thence to plaintiff's lands. It was held that the plaintiff was entitled to recover, the court saying: "It is also said by the appellant that 'the damages are too remote.' The proposition is put upon the ground that the plaintiff's lands did not lie next to the railroad, but, were separated from it by the lands of another. That circumstance is in the case, but no allusion was made to it upon the trial as a ground of defense, and it is conceded by the learned counsel for the appellant that the point now presented was not raised in the trial court. It, therefore, cannot be listened to. \* \* \* But the appellant urges that the objection, if made at the trial, could not have been obviated, and, therefore, claims that it may be raised at any time. The fact that land of a third party intervened between the woodland of the plaintiff and the defendant's road cannot be doubted, but that alone is not decisive. Other circumstances would control, and, if not already apparent in evidence, we cannot say that further testimony would not have shown that the result was to have been anticipated from the moment fire dropped upon the defendant's premises, and that the destruction which happened to the plaintiff's property was the natural and direct effect of the first firing. If so, it was not remote. (*Vandenburgh* v. *Truax*, 4 Den. 464; *Pollett* v. *Long*, 56 N. Y. 200; *Webb* v. *R., W. & O. R. R. Co.*, *supra.*) *Ryan's Case* (35 N. Y. 210), relied upon by the defendant, is sufficiently commented upon in the last two cases cited, and is not analogous to this case as now presented. The origin of the fire, upon the evidence and the verdict of the jury under proper instructions from the court, is to be attributed to the defendant, and to have been occasioned by its negligence. By its negligence, therefore, the fire which burned the plaintiff's woodlands was set in operation. The fact that it reached those woodlands by first burning the brush and other articles on

other land, furnishes no new cause to which the injury can be ascribed." The judgment was affirmed and the recovery sustained.

The question now before us was treated as before the court in that case, and it was reviewed and apparently decided. It is so stated in the head note and the case has been generally regarded both by the courts and by the legal profession as settling the law other than as it was laid down in the *Ryan* case, at least so far as woodlands are concerned. (*Brush* v. *Long Island R. R. Co.*, 10 App. Div. 535, 540; *Brown* v. *Buffalo, R. & P. R. R. Co.*, 4 App. Div. 465, 469; *Martin* v. *N. Y., O. & W. Ry. Co.*, 62 Hun, 181, 184.)

There is some reason for a distinction between woodlands and buildings crowded together in a city, because in the latter case there are facilities for putting out fires and the damages from a conflagration might be so overwhelming as to prevent men from investing in city property, which would affect the general welfare of the country. In populous places an arbitrary rule, founded upon division lines, may be necessary when a broad view of the subject is taken, in order to prevent ruin to the owners of real estate. Such a rule, however, must exist owing to necessity rather than logic, for it would make one who negligently kindled a fire on his own premises liable to the owner of lands immediately adjoining, even if his building extended one hundred feet, but not to several owners of different buildings upon precisely the same land. It is impossible to say logically that the first hundred rods of woodland burned over, if owned by one man, must be paid for, but not if owned by two or ten men. If the fire in question had burned a hundred trees, extending directly from the railroad land in a straight line, one rod apart, for a hundred rods, all owned by one man, the defendants would be liable for the whole loss; and if the same man had owned all of those trees except the first it would be unjust and unsatisfactory to hold that he could recover nothing. If the plaintiff had owned the entire territory burned over, the defendants would be bound to pay all the damages, and the mere fact that there

80

were several proprietors should not prevent a recovery by any except the abutting owner.

Arbitrary rules should be strictly limited to the peculiar facts which render them necessary and should not be extended to cases which may be decided upon reasonable and logical grounds. There is no necessity for such a rule in the case of forest lands, because they are not so valuable as to threaten ruin to the owner, and facilities for extinguishing fires are so meagre as to make it probable that a fire once started therein will run until arrested by some natural or artificial cause. Where the forest is continuous, with inflammable material spread uniformly over the land, and the fire extends in a direct line through it over the lands of several owners, even for a long distance, what intervening cause is there between the starting of the fire and the destruction of the last property burned? Why is not the destruction of the last piece of property the direct result of the defendant's negligence in starting the fire? Where a fire burns continuously, feeding upon materials of the same kind throughout its course, without any secondary or intervening cause, the last part burned is not the remote but the natural and probable result of the fire when first started, or at least it is within the power of a jury to so find. It was possible for the jury in this case to conclude that each link in the chain of cause and effect, from the setting of the fire to the destruction of the plaintiff's property was, according to common experience and the ordinary course of events, the reasonable and natural result to be anticipated. Each separate tree or heap of brush was not an intervening but a continuous cause, the same in principle, but not in degree, as if cordwood had been piled the entire distance. In that case would division in the ownership of the wood or of the land on which it stood divide responsibility? When fire is dropped at one end of a train of inflammable material, during a high wind and in a dry time, it is natural to expect that it will burn through to the other end unless interfered with in some way. That is the ordinary result and the one to be anticipated by a reasonable man. The wind and drought

are not intervening causes, but are the conditions surrounding the one who sets the fire and are presumed to be in his mind when he contemplates the probable result of his act.

The trial judge properly left it to the jury to find whether the destruction of the plaintiff's property was the natural and direct effect of negligence on the part of the defendants. It was for the jury to take into account all the circumstances, including the distance the fire ran before it reached her property, and decide whether it was the proximate cause of the injury. Mere distance has nothing to do with the question, except as it bears on the probability " that no intelligent man could have apprehended injury as the result of the negligent act." If the distance traversed by a fire is so great that the most remote part was not within the reasonable contemplation of the one who started it, the jury should be instructed accordingly, but in all ordinary cases it is for them to decide, under proper instructions from the court, whether the damages were the direct and natural result of the negligent act or not.

I find no error in this record that calls for a reversal, and I, therefore, dissent from the conclusion reached by a majority of the court and record my vote in favor of affirmance.

GRAY, O'BRIEN, BARTLETT and MARTIN, JJ., concur with HAIGHT, J., for reversal ; PARKER, Ch. J., concurs with VANN, J., for affirmance.

Judgment reversed, etc.